**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

STEVE SIMS,

          Plaintiff,

  v.

WORLDPAC INC.,

          Defendant.

_____/

No. C 12-05275 JSW

**ORDER DENYING MOTION TO DISMISS**

**INTRODUCTION**

Now before the Court for consideration is the motion to dismiss filed by Worldpac, Inc. ("Worldpac"). The Court has considered the parties' papers, relevant legal authority, the record in this case, and it finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court VACATES the hearing scheduled for March 1, 2013, and HEREBY DENIES Worldpac's motion.

**BACKGROUND**

Plaintiff Steve Sims ("Sims"), who currently is a resident of Washington State, was hired by Worldpac in 1978. Sims worked for Worldpac until May 24, 2011, when Worldpac terminated his employment. (First Amended Complaint ("FAC") ¶¶ 1, 7, 22-23.)    In May 2010, Sims traveled to California and testified at a deposition in a case brought against Worldpac by a former employee, who claimed Worldpac wrongfully terminated him. According to Sims, he testified that his testimony contradicted Worldpac's position that the employee had performed poorly. Worldpac settled the matter three months after Sims' deposition. (*Id.* ¶¶ 9-13.)

1    Sims alleges that in November 2010, Worldpac's President, Bob Cushing ("Cushing")

2  and its Senior Vice President of Operations, Patrick Healy ("Healy") called him from California

3  and told him that "to keep his job he would have to relocate from his home in Arkansas (where

4  he had been working from home for four years) and move to a Worldpac office in Texas." (*Id.*

5  ¶ 14.)  Sims and his wife moved to Texas, although he claims that Cushing and Healy had no

6  intention of retaining Sims as an employee and expected him to resign instead.  (*Id.* ¶¶ 15-16.)

7    On May 24, 2011, Cushing and Worldpac's Human Resources Manager, Ryan Caldwell,

8  met with Sims and informed him that he was terminated.  Sims does not specifically allege

9  where this meeting took place, but he does allege that Cushing made the decision to terminate

10  him in California and made all arrangements relating to the termination in California.  (*Id.*

11  ¶¶ 22-23.)  At the time Worldpac terminated him, Sims was 57, and Worldpac replaced him

12  with someone younger and gave that person a promotion.  (*Id.* ¶¶ 26-27.)

13    Based on these and other allegations that the Court shall discuss as needed, Sims alleges

14  that Worldpac: (1) retaliated against him in violation of California's Fair Housing and

15  Employment Act ("FEHA"), California Government Code section 12940(h) (the "FEHA

16  retaliation claim"); (2) discriminated against him on the basis of his age, in violation of FEHA

17  (the "FEHA discrimination claim"), Government Code section 12940(a) and the Age

18  Discrimination in Employment Act ("ADEA"), 29 U.S.C. section 623(a); (3) wrongfully

19  terminated him in violation of public policy; and (4) engaged in fraud and deceit (the "fraud

20  claim").

21                                            **ANALYSIS**

22  **A.    Applicable Legal Standard.**

23    A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

24  pleadings fail to state a claim upon which relief can be granted.  The complaint is construed in

25  the light most favorable to the non-moving party and all material allegations in the complaint

26  are taken to be true.  *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  However, even

27  under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's

28  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

**United States District Court**
For the Northern District of California

2

**United States District Court**
For the Northern District of California

1   conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

2   *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265,

3   286 (1986)).

4         Where, as here, a plaintiff pleads a claim for fraud, he must also satisfy the requirements

5   of Rule 9(b).  Under Rule 9(b), claimants must allege with particularity the circumstances

6   constituting fraud.  *Moore v. Kayport Package Exp., Inc.*, 885 F. 2d 531, 540 (9th Cir. 1989).

7   The claimant satisfies the heightened particularity requirement if the allegations in his

8   complaint "identif[y] the circumstances constituting fraud so that a defendant can prepare an

9   adequate answer from the allegations."  *Id.*  Averments of fraud must be accompanied by "the

10   who, what, when, where, and how" of the misconduct charged.  *Vess v. Ciba-Geigy Corp. USA*,

11   317 F.3d 1097, 1106 (9th Cir. 2003).

12         Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but

13   must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at

14   570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

15   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

16   *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility

17   standard is not akin to a probability requirement, but it asks for more than a sheer possibility

18   that a defendant has acted unlawfully....  When a complaint pleads facts that are merely

19   consistent with a defendant's liability, it stops short of the line between possibility and

20   plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation

21   marks omitted).  If the allegations are insufficient to state a claim, a court should grant leave to

22   amend, unless amendment would be futile.  *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291,

23   296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242,

24   246-47 (9th Cir. 1990).

25   **B.**    **The FEHA and Wrongful Termination Claims.**

26         Worldpac moves to dismiss both FEHA claims and the wrongful termination claims on

27   the basis that FEHA cannot be applied extraterritorially.  In general, there is a presumption that

28   the "Legislature did not intend a statute to be operative, with respect to occurrences outside the

**United States District Court**
For the Northern District of California

1    state, ... unless such intention is clearly expressed or reasonably to be inferred from the

2    language of the act or from its purpose, subject matter or history." *Sullivan v. Oracle*

3    *Corporation*, 51 Cal. 4th 1191, 1207 (2011) (holding that unfair competition law could not be

4    used by non-residents to assert a claim based on alleged violations of the Fair Labor Standards

5    Act for failure to pay overtime for worked performed in states other than California).

6         Looking to the statutory language and the legislative history of FEHA, the California

7    Court of Appeal has held that FEHA "was not intended to apply to non-residents where ... the

8    tortious conduct took place out of this state's territorial boundaries." *Campbell v. Arco Marine,*

9    *Inc.*, 42 Cal. App. 4th 1850, 1852 (1996); *see also Gonsalves v. Infosys Technologies, Inc.*,

10   2010 WL 1854146 (N.D. Cal. May 6, 2010) (relying on *Campbell* to dismiss FEHA claim

11   brought by non-resident plaintiff).  In *Campbell*, the plaintiff, a resident of Washington State,

12   brought sexual harassment claims against her employer under FEHA based on conduct that took

13   place aboard a ship on the high seas.  The only nexus between the employer's conduct and

14   California was the fact that the employer's headquarters were in California, but the plaintiff did

15   not allege that anyone "in its headquarters participated in or ratified the conduct." *Id.* at 1858.

16   The court concluded that these facts were insufficient to give rise to a claim under FEHA.

17        In the *Gonsalves* case, the plaintiff, an Ohio resident who had never worked in

18   California, alleged that his employer had discriminated against him on the basis of his age and

19   retaliated against him, in violation of FEHA.  The court noted that to state a claim under FEHA,

20   the plaintiff would be required to show (1) that he had been employed in California or (2) that

21   the allegedly tortious conduct took place in California.  In support of the former, the plaintiff

22   alleged that he traveled to California on several occasions and managed clients in California.

23   The court concluded those allegations were insufficient and reasoned that "[t]o interpret FEHA

24   as covering all employees who perform some job duties or manage some clients in California,

25   even when no connection exists between the California activities and the discrimination at

26   issue, would clearly implicate the federal constitutional concerns that animated *Campbell*'s

27   limitation on FEHA's extraterritorial reach." *Id.* (citing *Campbell*, 42 Cal. App. 4th at 1858-

28   59).

4

United States District Court

For the Northern District of California

1    The court found that the plaintiff's allegations regarding where the tortious conduct took

2    place presented a "closer issue."  However, the court stated that the plaintiff failed to identify

3    who was responsible for the decision to demote and terminate him, where those individuals

4    were located, and where the plaintiff was located at the time his employer was alleged to have

5    discriminated against him, deficiencies that had led the court to dismiss an earlier complaint.

6    *Id.*

7    The court also found that plaintiff's allegations that the decision to terminate him was approved,

8    implemented and ratified in California were "extremely general in nature" and insufficient to

9    establish a nexus between the alleged discrimination and California.  *Id.*, 2010 WL 1854146, at

10   *6.

11       Worldpac argues that Sims' allegations are too general to establish that the allegedly

12   tortious conduct occurred in California.  Sims relies on the fact that Worldpac's headquarters

13   are located in California and on the fact that Cushing and Caldwell worked in Worldpac's

14   headquarters in California to allege that the tortious conduct took place in California.  Unlike

15   the plaintiff in the *Gonsalves* case, however, Sims does identify the individuals who engaged in

16   the alleged discriminatory and retaliatory conduct, Cushing, Healy and Harding, and he does

17   more than merely imply that Cushing, Healy and Harding worked in Worldpac's headquarters

18   in Newark, California.  (*Id.* ¶¶ 2, 11, 14-15, 22.)  Sims also alleges that Cushing was in

19   California when he and Healy advised Sims that Sims would no longer be permitted to work

20   from his home in Arkansas and would be required to move to Texas. (FAC ¶¶ 14-15.)[1]  Sims

21   also alleges that Cushing made the decision to terminate him in California, and made all

22   arrangements associated with his termination in California.

23       Worldpac argues that Sims' allegations regarding where the decision to terminate Sims

24   was made are immaterial, because that decision is not the event that gives rise to liability.  The

25   Court does not find this argument persuasive.  In *Sullivan*, the court noted that it was not

26   unlawful in the abstract for an employer to erroneously classify an employee as exempt from

27   _____

28   [1]    Worldpac does not raise any other arguments in support of its motion to
     dismiss the FEHA claims.  Accordingly, the Court assumes for the sake of argument that this
     conduct could give rise to a retaliation claim under FEHA.

United States District Court
For the Northern District of California

overtime.  Rather, what was unlawful - and what would give rise to liability - was the failure to

pay overtime wages.  Because the plaintiffs had not alleged that their wages were paid - or

underpaid - in California, the court concluded that the non-resident plaintiffs could not state a

claim under the UCL.  *Sullivan*, 51 Cal. 4th at 1208.  In contrast to *Sullivan*, if the decision to

terminate Sims was motivated either by discriminatory animus or in retaliation for his

deposition testimony, that decision would be unlawful.  Moreover, neither *Campbell* nor

*Gonsalves* suggest that the locus of the decision making process is immaterial to establishing

the requisite nexus to tortious conduct in California.  Rather, in those cases, the courts found

that there were insufficient facts to conclude that the decisions had been made in California.

*Campbell*, 42 Cal. App. 4th at 1858 (noting that "no one in" employer's California

"headquarters participated in or ratified the [tortious] conduct"); *Gonsalves*, 2010 WL

18454146, at *6 ("[i]f California-based employees participated in or ratified the alleged tortious

conduct, the complaint must so state with specificity so that the Court can determine if these

actions are sufficient to state a claim under FEHA") (quoting *Dodd-Owens v. Kyphon, Inc.*,

2007 WL 410191, at *3 (N.D. Cal. Feb. 5, 2007)).

The Court finds that Sims' allegations are more specific than the allegations in either

*Campbell* or *Gonsalves,* and are sufficient, at the pleading phase, to establish that the allegedly

tortious conduct supporting his FEHA claims occurred in California.

Accordingly, the Court denies Worldpac's motion to dismiss the FEHA claims.  Because

the wrongful termination claims are derivative of the FEHA claims, the Court also denies the

motion to dismiss those claims.[2]

**C.      The Fraud Claim.**

Worldpac also moves to dismiss the fraud claim on the basis that Sims cannot bring a

claim under California law for representations he received and relied on in another state,

presumably Arkansas.  In support this argument, Worldpac relies on *In re Sony Gaming*

_____

[2]      Sims asserts two claims for relief based on wrongful termination in violation
of public policy.  The fifth claim for relief is derivative of the ADEA claim and the FEHA
retaliation claim.  Worldpac does not move to dismiss the ADEA claim.  Accordingly, to the
extent the fifth claim for relief is premised upon a violation of the public policy embodied in
the ADEA, the Court DENIES Worldpac's motion to dismiss that claim.

United States District Court

For the Northern District of California

1  *Networks & Consumer Data Sec. Breach*, – F. Supp. 2d –, 2012 WL 4849054 (S.D. Cal. Oct.

2  11, 2012).  In that case, following *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 593-94

3  (9th Cir. 2012), the court dismissed claims brought by non-resident plaintiffs for violations of

4  California's Consumer Legal Remedies Act, the False Advertising Law, and the Unfair

5  Competition Law, where the non-resident plaintiffs received the alleged misrepresentations

6  outside California.  *In re Sony Gaming Networks*, 2012 WL 4849054, at *13-14.  The Court

7  finds Worldpac's argument unpersuasive.  Sims' claim is for common law fraud and, thus, does

8  not implicate extraterritorial application of California consumer protection statutes.  This issue

9  is properly framed as a choice of law question, which has not been adequately briefed by either

10  party.[3]

11      Worldpac also moves to dismiss on the basis that Sims fails meet the requirements of

12  Rule 9(b).  Sims alleges that Cushing and Healy called him at 5:00 p.m. on November 18, 2010,

13  and that Cushing was in California, although Sims does not allege where he was when he

14  received the phone call.  Sims also alleges that Cushing and Healy told him that to keep his job,

15  he would have to relocate from Arkansas to Texas, but that this representation was false

16  because they had no intention of keeping him on as an employee.  Sims also alleges that he

17  believed Cushing and Healy and, in reliance on their representations, made plans to move to

18  Texas, including obtaining a loan and putting an offer down on a home.  (*See* FAC ¶¶ 63-66.)

19  Sims has alleged facts supporting "the who, what, when, where, and how" of the alleged

20  fraudulent conduct.  *Vess*, 317 F.3d at 1106.

21      Worldpac argues that the allegations are insufficient to state a claim, because the mere

22  intention not to perform is insufficient to prove a fraudulent intent.  However, the cases on

23  which Worldpac rely for this proposition resolved the issue on a motion for summary judgment

24  and after trial and did not address the sufficiency of the allegations in a complaint.  *See Tenzer*

25  *v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985); *Church of Merciful Savior v. Volunteers of*

26  *America, Inc.*, 184 Cal. App. 2d 851, 859 (1960).  Similarly, Worldpac argues that "Cushing

27  and Healy's conduct would not constitute actionable fraud even if they did make the alleged

28

---

[3]  This Order should not be construed as resolving the choice of law issue.

**United States District Court**
For the Northern District of California

1   misrepresentation in order to end Plaintiff's employment." (Mot. at 13:20-26, citing *Hunter v.*

2   *Up-Right, Inc.*, 6 Cal. 4th 1174, 1184-85 (1993).) In the *Hunter* case, the court held that

3        wrongful termination of employment ordinarily does not give rise to a
         cause of action for fraud or deceit, even if some misrepresentation is made

4        in the course of the employee's dismissal. Tort recovery is available only
         if the plaintiff can establish all of the elements of fraud with respect to a

5        misrepresentation that is separate from the termination of the employment
         contract, *i.e.* when the plaintiff's fraud damages cannot be said to result

6        from the termination itself.

7   *Id.* at 1178; *see also id.* at 1185 ("a misrepresentation *not* aimed at effecting termination of

8   employment, but instead designed to induce the employee to alter detrimentally his or her

9   position in some other respect, might form a basis for a valid fraud claim even in the context of

10  a wrongful termination") (emphasis in original). The Court cannot say as a matter of law that

11  the alleged misrepresentations were made solely to effect Sims' termination. Although Sims

12  may face an uphill battle to *prove* the claim, he has alleged sufficient facts to state a claim.

13       Accordingly, the Court DENIES the motion to dismiss the fraud claim.

14       **IT IS SO ORDERED.**

15

16  Dated: February 22, 2013                 _____

17                               JEFFREY S. WHITE
                                 UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28